1  SUIHUAN CAO
   A38-494-554
2  San Diego Detention Center (CCA)
   P.O. Box 439049
3  San Ysidro, CA 92143-9049



4

5

6

7

8                UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11

12
   SUIHUAN CAO,                          Civil Action No.
13 [A38-494-554]
                                      )
14                                    )
              Petitioner,             )     '08 CV 0511 DMS BLM
15                                    )
   v.                                 )
16                                    )
   MICHAEL CHERTOFF, SECRETARY OF THE  )  STATEMENT OF FACTS AND
17 DEPARTMENT OF HOMELAND SECURITY,   )  MEMORANDUM OF POINTS AND
   MICHAEL MUKASEY, ATTORNEY GENERAL, )  AUTHORITIES IN SUPPORT OF
18 ROBIN F. BAKER, DIRECTOR OF SAN DIEGO )  PETITIONER'S MOTION
   FIELD OFFICE, BUREAU OF IMMIGRATION )
19 AND CUSTOMS ENFORCEMENT, JOHN A.   )
   GARZON, OFFICER-IN-CHARGE,         )
20                                    )
                                      )
21           Respondents.             )
                                      )
22 _____ )

23                            I.

24                 STATEMENT OF FACTS

25      The petitioner has been ordered removed from the United States by the respondents. However,

26 because he cannot be removed to his country of origin or any alternate country, he is being held by

27 respondents, based upon their misconstrual of their statutory authority to detain non-removable aliens

28 indefinitely under 8 U.S.C. § 1231(a)(6).

                              1

1    Petitioner, a native of China, entered the custody of Respondents over nine months ago, on or about

2    June 8, 2007, where he has remained since.  He was ordered removed from the United States by an

3    Immigration Judge on October 2, 1995; the Board of Immigration Appeals (BIA) affirmed the decision on

4    March 24, 1997.  He is being held in detention by Respondents based upon their misapplication of 8 U.S.C.

5    § 1231(a)(6) to indefinitely detain non-removable aliens.

6    The petitioner was born in 1970 in Canton, China.  In 1983, at age 13, he left for the United States,

7    entering as a legal permanent resident under the sponsorship of his grandfather.  Petitioner was ordered

8    removed to China by an immigration judge on October 2, 1995.  Petitioner's order of removal became

9    adminstratively final as of March 24, 1997, after the BIA dismissed his appeal.  See 8 C.F.R. § 1241.1; see

10   also 8 C.F.R. § 1240.15.  Petitioner's removal period commenced as of March 24, 1997.  See 8 U.S.C.

11   § 1231(a)(1)(B) (i).  ("The removal period begins on the latest of the following: . . . The date the order of

12   removal becomes administratively final.").

13    Petitioner was most recently taken from his home into the custody of immigration officials on or

14   about June 8, 2007, and has remained in their continuous custody for the nine months since.  Prior to the

15   administrative finality of his removal order, Petitioner had previously been taken into custody and released

16   on bond in or about 1993.  Petitioner has been under a final order of removal since March 24, 1997—for

17   nearly eleven years.  In that eleven year period, Respondents have not obtained the travel documents

18   necessary for his removal.

19    In the nine month period Petitioner has been in their custody to date, Respondents have failed to

20   conduct the custody review required by regulation, see 8 C.F.R. § 241.4(k)(1)(i), within the 90-day removal

21   period.  See 8 U.S.C. § 1231(a)(1).  Instead, on January 23, 2008, seven months after they detained

22   Petitioner, and over four months after the required review, Respondents issued an order to continue detention

23   on that date.  See Appendix A to the Petition.  The order recommended detention on the ground that: "By

24   the time of your 20th birthday [in 1990] you had already been convicted of four serious felony crimes.

25   Several years later you were again convicted of three serious felony crimes.  You have demonstrated a

26   flagrant disregard for the laws of the United States as well as for the lives of the general public."  Id.  The

27   order made no claim that Petitioner was a flight risk or danger to the community.  See id.  The order made

28   no mention of any progress in obtaining travel documents for petitioner.  See id.  The order further stated

1   that if Petitioner was not "released or removed from the United States by April 14, 2008, jurisdiction of the

2   custody decision in your case will be transferred to the Headquarters Post Order Unit (HQPDU), 801 I St.

3   NW, Washington, DC 20536. HQPDU will made a final determination regarding your custody." Id. To

4   date, Petitioner has received no further communication regarding his custody status, and does not know

5   whether HQPDU has made a determination of his status.

6          Over nine months have elapsed since Petitioner was in custody under a final order of removal and

7   subject to removal. At no time during these past nine months, or in the eleven years since Petitioner's

8   removal order was administratively final has the United States government received travel documents that

9   would permit his repatriation to China. See 8 U.S.C. § 1231(b)(2)(A), (D), (E)(iv)-(vi) (deportable alien

10  must be removed first to country designated by him at deportation hearing, then to country of citizenship,

11  then to listed countries, including the country of birth or that country having sovereignty over it at time of

12  the alien's birth or at time of the deportation.). Neither have Respondents given any indication why, after

13  eleven years, Petitioner has suddenly been taken from his home into immigration custody. As the Chinese

14  government has not issued travel documents in the nine months since Petitioner has been subject to a final

15  order of removal, it is extremely unlikely that its government will issue travel documents to permit his

16  removal there in the reasonably foreseeable future. Neither have Respondents obtained travel documents

17  that would permit his removal to any other country. Thus, the United States has had ample opportunities

18  to obtain travel documents, yet has failed to do so. There is therefore no indication that the petitioner can

19  removed to China, or any other country, in the reasonably foreseeable future.

20          The respondents continue to hold the petitioner in custody, despite the fact that well over six months

21  have elapsed. See Zadvydas v. Davis, 533 U.S. 678, 701 (2001) (requiring a court to evaluate whether the

22  detention of a deportable alien "exceeds a period reasonably necessary to secure removal" and to release an

23  alien when "it has been determined that there is no significant likelihood of removal in the reasonably

24  foreseeable future," after the expiration of a six-month period following the issuance of a final order of

25  deportation or removal); see also Ma v. Ashcroft, 257 F.3d 1095, 1102 n.5 (9th Cir. 2001) (declaring that

26  "in Zadvydas, the Supreme Court read the statute to permit a 'presumptively reasonable' detention period

27  of six months after a final order of removal–that is, three months after the statutory removal period has

28  ended . . . .").

1    The petitioner has less than $500 in his account at the San Diego Detention Center. <u>See</u> <u>Prison</u>

2  <u>Certificate</u>, Form CIV-67, Prison Certificate, attached hereto as Exhibit A. Since he is in custody, he does

3  not have a source of income or employment. Petitioner was employed as a waiter at the Wing Hing Chinese

4  Restaurant in Philadelphia, Pennsylvania, for four years before he was taken into custody. His monthly

5  earnings were approximately $2,000, which terminated in June 2007 due to his prolonged detention. He has

6  no checking, savings or other financial accounts. Petitioner owns a 2001 Honda Civic; he owns no real

7  property or any other assets. As a result, he cannot afford to retain counsel.

8    Additionally, petitioner has had no formal legal education or training in the United States or

9  anywhere else. <u>See</u> Declaration of Janet Tung in Support of the Petitioner's Motion, ¶ 16. Accordingly,

10  the petitioner requests that this Court appoint the Federal Defenders of San Diego, Inc., to represent him in

11  the instant habeas action. That office stands ready and able to assist the petitioner in this petition. <u>See id</u>.¶¶

12  2-6.

13                                                    **II.**

14                                              **ARGUMENT**

15    **THIS COURT SHOULD APPOINT COUNSEL FOR THE PETITIONER.**

16    Habeas corpus proceedings "are of 'fundamental importance . . . in our constitutional scheme because

17  they directly protect our most valued rights.'" <u>Brown v. Vasquez</u>, 952 F.2d 1164, 1169 (9th Cir. 1991)

18  (quoting <u>Bounds v. Smith</u>, 430 U.S. 817, 827 (1977)) (citations and internal quotations omitted).

19  Consequently, federal law permits a district court to appoint counsel in a habeas proceeding under 28 U.S.C.

20  § 2241 when the "interests of justice so require," if a petitioner has shown that he is unable to afford an

21  attorney. 18 U.S.C. §3006A(a)(2)(B). To make this decision, this Court must "evaluate [1] the likelihood

22  of success on the merits as well as [2] the ability of the petitioner to articulate his claims <u>pro se</u> in light of

23  the complexity of the legal issues involved." <u>Weygandt v. Look</u>, 718 F.2d 952, 954 (9th Cir. 1983); <u>accord</u>

24  <u>Rand v. Rowland</u>, 113 F.3d 1520, 1525 (9th Cir. 1997).

25    As is indicated below, the petitioner is highly likely to succeed on the merits of his claim, but will

26  be unable to effectively articulate his claims through a <u>pro se</u> action, in light of his limited educational

27  background. <u>See</u> Declaration of Janet Tung, ¶ 16. The petitioner cannot otherwise afford to retain counsel

28  for the litigation of his petition for a writ of habeas corpus under 28 U.S.C. § 2241. Thus, the appointment

1   of counsel is appropriate.[2]

2   **The Petitioner Is Highly Likely to Succeed on the Merits of His Claim.**

3   In Zadvydas, the Supreme Court held that 8 U.S.C. § 1231(a)(6) authorizes only a period of detention

4   that is reasonably necessary to bring about an alien's removal from the United States, and "does not permit

5   indefinite detention." Zadvydas, 533 U.S. at 689.  If a deportable alien has not been released from

6   immigration custody within a six-month period after the issuance of a final order of removal or deportation,

7   "the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure

8   removal." Id. at 701; see also Ma, 257 F.3d at 1102 n.5 (declaring that "in Zadvydas, the Supreme Court

9   read the statute to permit a 'presumptively reasonable' detention period of six months after a final order of

10  removal -- that is, three months after the statutory removal period has ended") (citations omitted).  If a

11  deportable alien "provides good reason to believe that there is no significant likelihood of removal in the

12  reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."

13  Zadvydas, 533 U.S. at 701. Federal officials **must** release a deportable alien from custody under appropriate

14  conditions of supervision when no "significant likelihood of removal [exists] in the reasonably foreseeable

15  future." Id. at 699-700; see also Ma, 257 F.3d at 1100 (concluding that federal law mandates release of the

16  alien under 8 U.S.C. § 1231(a)(3) when the alien "has already entered the United States and there is no

17  reasonable likelihood that a foreign government will accept the alien's return in the reasonably foreseeable

18  future . . . .").

19  The petitioner has been detained in the custody of respondents **since June 8, 2007**. In the time since

20

21  [2] In identical habeas proceedings, the Honorable Roger T. Benitez of the United States District Court for the Southern District of California has appointed the Federal Defenders of San Diego, Inc. as counsel of record for a similarly-situated petitioner. Casas-Castrillon v. Department of Homeland Security, Case No. 05CV1552-BEN (NLS) (S.D.Cal. Jan. 31, 2006). Likewise, the Honorable Irma E. Gonzalez appointed counsel in Hanna v. INS, Case No. 01CV0382-IEG (JFS) (S.D. Cal. Apr. 26, 2001). The Honorable Napoleon A. Jones has appointed the Federal Defenders of San Diego, Inc., based upon the petitioners' financial eligibility, their likelihood of success on the merits of the habeas petition, the complexity of the legal issues involved in the habeas action, the petitioners' lack of education and limited proficiency in English, and the need for assistance in obtaining discovery from federal immigration officials. See Chaydy v. INS, Case No. 00CV1687-J (JAH) (S.D. Cal. Sept. 1, 2000). Other judges in the United States District Court for the Southern District of California have made similar appointments. See Aphayavong v. INS, Case No. 00CV0804-J (LAB) (S.D. Cal. June 22, 2000); see also Gebru v. INS, Case No. 01CV0625-JM (POR) (S.D. Cal. Jul. 11, 2001); Sahagian v. INS, Case No. 01CV066-BTM (RBB) (S.D. Cal. May 18, 2001); Cao v. INS, Case No. 00CV1991-L (JAH) (S.D. Cal. Oct. 10, 2000).

1  his order of removal became final on March 24, 1997, the United States government has not received travel

2  documents that would permit the petitioner's repatriation to China or any alternate country.  As the Chinese

3  government has not issued travel documents in the <u>eleven years</u> since Petitioner has been subject to a final

4  order of removal, it is extremely unlikely that its government will issue travel documents to permit his

5  removal there in the reasonably foreseeable future.  Neither have Respondents obtained travel documents

6  that would permit his removal to any other country.  The 90-day removal period following the issuance of

7  a final order of deportation ended on September 6, 2007.

8      The petitioner's detention beyond the presumptively reasonable detention period announced in

9  <u>Zadvydas</u> violates §1231(a)(6), because it is not significantly likely that the petitioner can be removed to

10 China or an alternate country in the reasonably foreseeable future.  See <u>Zadvydas</u>, 533 U.S. at 700; <u>see also</u>

11 <u>Ma</u>, 257 F.3d at 1112 (holding that section 1231 mandates the release of deportable aliens "at the end of the

12 presumptively reasonable detention period" when "there is no repatriation agreement and no demonstration

13 of a reasonable likelihood that one will be entered into in the near future").  Since there is no evidence that

14 petitioner will indeed be removed in the reasonably foreseeable future, he is highly likely to succeed on the

15 merits of his habeas petition.  This circumstance, in conjunction with the following elements, suggests the

16 need for the appointment of counsel.

17 **B.    The Petitioner Cannot Adequately Articulate His Claims in the Absence of Counsel, in Light
        of the Complexity of the Legal Issues Involved in His Petition for Habeas Relief.**

18

19     To weigh the petitioner's ability to articulate his claims in the absence of counsel, a court must

20 measure "the [petitioner]'s ability to articulate his claims against the relative complexity of the matter."

21 <u>Rand</u>, 113 F.3d at 1525.  In addition, counsel may be appointed during federal habeas proceedings if the

22 appointment of an attorney is "necessary for the effective utilization of discovery procedures,. . . [or] if an

23 evidentiary hearing is required."  <u>Weygandt</u>, 718 F.2d at 954 (other internal citations omitted).[3]

24     As is indicated above, the instant case involves complex legal issues grounded in constitutional law,

25 statutory interpretation, principles of jurisdiction, and administrative procedure.  While the Supreme Court's

26 _____

27     [3] The Federal Defenders of San Diego, Inc. drafted the instant pleading, as well as the petition for
    a writ of habeas corpus.  Thus, this Court cannot conclude, based upon these pleadings, that the petitioner
28 has a firm grasp of the legal and factual issues involved in federal habeas proceedings.

1   opinion in <u>Zadvydas</u> has clarified many legal issues, several legal issues remain unresolved, including the

2   determination of acceptable conditions of supervision or release. Moreover, the fact that respondents have

3   not demonstrated full compliance with the <u>Zadvydas</u> mandate, as of the date of this motion, indicates that

4   this litigation still remains necessary. <u>See</u> Declaration of Janet Tung, ¶¶ 9-12.

5         Since the petitioner is in the custody of federal immigration officials, moreover, an analysis of

6   immigration law is required. The Ninth Circuit has declared that "'[w]ith only a small degree of hyperbole,

7   the immigration laws have been deemed second only to the Internal Revenue Code in complexity.'" <u>United</u>

8   <u>States v. Ahumada-Aguilar</u>, 295 F.3d 943, 950 (9th Cir. 2002) (citations and internal quotations omitted).

9   In most cases involving an immigration law, "[a] lawyer is often the only person who could thread the

10  labyrinth.'" <u>Id.</u>  The absence of counsel during immigration proceedings will be prejudicial when an

11  attorney could have assisted a litigant in seeking relief under applicable immigration laws, statutes, and

12  cases. <u>Id.</u> at 951-52 (prohibiting the use of a deportation order during a subsequent prosecution for illegal

13  re-entry because the absence of counsel affected the alien's ability to ascertain his eligibility for a waiver

14  of deportation, the viability of a claim of United States citizenship, and his ability to obtain "special

15  permission" to return to the United States after his deportation).

16        The petitioner's lack of expertise in legal issues warrants the appointment of counsel. The petitioner

17  has no post-secondary education in this country, and has never been trained in the practice of law. <u>See</u>

18  Declaration of Janet Tung, ¶ 16. The absence of any formal legal background or training poses an obstacle

19  to the petitioner's understanding of the issues involved in the instant proceedings, and warrants the

20  appointment of counsel to help him obtain the relief requested in his habeas petition. <u>See</u> Declaration of

21  Janet Tung, ¶ 16.

22        Additionally, the appointment of counsel may be appropriate during federal habeas proceedings if

23  it is "necessary for the effective utilization of discovery procedures,...[or] if an evidentiary hearing is

24  required." <u>Weygandt</u>, 718 F.2d at 954. The respondents have information and documents relevant to the

25  petitioner's habeas petition, including information relating to his criminal history, his bail or parole history,

26  his institutional history, the content of communications between federal immigration officials and the

27  embassy of the petitioner's native country, and other documents relating to his detention by the Bureau of

28  Immigration and Customs Enforcement.

1    The petitioner cannot effectively pursue and obtain discovery from respondents that he will need to

2    adequately present his claims without the assistance of counsel, in light of his limited education and lack

3    of familiarity with the legal procedures involved in requesting and obtaining discovery.  Moreover, the

4    petitioner cannot adequately review and evaluate his alien registration file (hereinafter "A-file") or evaluate

5    relevant discovery regarding the likelihood of his removal from the United States without the aid of counsel.

6    The need for discovery, too, suggests the need for the appointment of the Federal Defenders of San Diego,

7    Inc. in the instant matter.

8    **C.    The Potential Need for an Evidentiary Hearing Warrants the Appointment of Counsel.**

9    The Government must proffer evidence "sufficient to rebut [the] showing by a deportable alien that

10   "good reason [exists] to believe that there is no significant likelihood of removal in the reasonably

11   foreseeable future." Zadvydas, 533 U.S. at 701.  Since the Government is required to present evidence to

12   rebut the petitioner's contention that his removal to China or an alternate country is not likely in the

13   reasonably foreseeable future, an evidentiary hearing may be necessary to litigate disputed issues of fact.

14   See Lawson v. Borg, 60 F.3d 608, 611 (9th Cir. 1995) (requiring an evidentiary hearing to litigate contested

15   issues of fact during federal habeas proceedings); see also Weygandt, 718 F.2d at 954 (noting that the

16   appointment of counsel may be appropriate during federal habeas proceedings "if an evidentiary hearing is

17   required").  The petitioner lacks a sufficient legal background to advocate for himself during a contested

18   motion hearing.  See Declaration of Janet Tung, ¶¶ 16.  The appointment of counsel is necessary to ensure

19   that the petitioner's rights are adequately protected in contested habeas proceedings.

20   **D.    The Prison Litigation Reform Act, 28 U.S.C. § 1915, Does Not Require the Petitioner to Pay**
     **Filing Fees to Proceed with His Request for Federal Habeas Relief.**
21

22   The Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915, ordinarily requires a prisoner who

23   "brings a civil action or files an appeal in forma pauperis" to "pay the full amount of a filing fee" and to

24   cover subsequent court fees incurred during the litigation of the inmate's claim. 28 U.S.C. § 1915(b).  In

25   Naddi v. Hill, however, the Ninth Circuit concluded that "[a] review of the language and intent of the PLRA

26   reveals that Congress was focused on prisoner civil rights and conditions cases, and did not intend to include

27   habeas proceedings in the scope of the Act." 106 F.3d 275, 277 (9th Cir. 1997).  Consequently, the Ninth

28   Circuit declined to apply the *in forma pauperis* provisions of the PLRA to habeas petitioners, and to thereby

1   require habeas petitioners to pay full filing fees and court costs.

2         The petitioner in the instant case is filing a petition for a writ of habeas corpus under 28 U.S.C.

3   § 2241, along with the instant motion.  Since the petitioner is not filing another civil action for relief from

4   the conditions of confinement, such as a civil suit under 42 U.S.C. § 1983, he is not required to pay the full

5   amount and filing fees and court costs to pursue habeas relief.  Therefore, this Court cannot dismiss his

6   petition for relief, or otherwise penalize the petitioner, for his failure to pay the full amount of filing fees

7   specified in 28 U.S.C. § 1915.

8   **III.**

9   **CONCLUSION**

10         For the foregoing reasons, the petitioner respectfully requests that this Court grant the motion for

11   appointment of counsel in this habeas corpus action.

12                         Respectfully submitted,

13

14   Dated: _3/15/08_ .

15                         **SUIHAN CAO**
                      Petitioner

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

If you are a **prisoner** you <u>must</u> have an officer from your institution provide this official certificate as to the amount of money in your prison account. <u>There are no exceptions to this requirement.</u>

## PRISON CERTIFICATE
### (Incarcerated applicants only)
### (To be completed by the institution of incarceration)

I certify that the applicant _Sui HUAN CAO_ ,
(NAME OF INMATE)

_A# 38494554_ ,
(INMATE'S CDC NUMBER)

has the sum of $ _437.61_ on account to his/her credit at _____

_SDCF    CCA_ .
(NAME OF INSTITUTION)

I further certify that the applicant has the following securities ____ _O_ ____

to his/her credit according to the records of the aforementioned institution. I further certify that **during the past six months** the applicant's *average monthly balance* was $ _242.83_ ,

and the *average monthly deposits* to the applicant's account was $ _10.45_ .

ALL PRISONERS **MUST** ATTACH A CERTIFIED COPY OF THEIR TRUST ACCOUNT STATEMENT SHOWING TRANSACTIONS FOR THE SIX-MONTH PERIOD IMMEDIATELY PRECEDING THE FILING OF THE COMPLAINT PER 28 U.S.C. § 1915(a)(2).

_2/19/08_
DATE

SIGNATURE OF AUTHORIZED OFFICER OF INSTITUTION

_Richard C. Crouch_
OFFICER'S FULL NAME (PRINTED)

_BUSINESS MANAGER_
OFFICER'S TITLE/RANK

INMATE AVERAGE BALANCE WORKSHEET   IM # 38494554   Sun Huan CAO

Beginning Balance          0.00

| | | DEPOSIT | WITHDRAW | TOTAL | DAILY BALANCE | |
|---|---|---|---|---|---|---|
| **Aug** | | | | | | |
| | 31 | | | 0.00 | 0.00 | |
| | | 0.00 | 0.00 | | 0.00 | 0.00 |
| | | 0.00 | | | | |
| **Sep** | | | | | | |
| | 1 | | | 0.00 | 0.00 | |
| | 2 | | | 0.00 | 0.00 | |
| | 3 | | | 0.00 | 0.00 | |
| | 4 | | | 0.00 | 0.00 | |
| | 5 | | | 0.00 | 0.00 | |
| | 6 | | | 0.00 | 0.00 | |
| | 7 | | | 0.00 | 0.00 | |
| | 8 | | | 0.00 | 0.00 | |
| | 9 | | | 0.00 | 0.00 | |
| | 10 | | | 0.00 | 0.00 | |
| | 11 | | | 0.00 | 0.00 | |
| | 12 | | | 0.00 | 0.00 | |
| | 13 | | | 0.00 | 0.00 | |
| | 14 | 200.00 | | 200.00 | 200.00 | |
| | 15 | | | 0.00 | 200.00 | |
| | 16 | | | 0.00 | 200.00 | |
| | 17 | | | 0.00 | 200.00 | |
| | 18 | | | 0.00 | 200.00 | |
| | 19 | | | 0.00 | 200.00 | |
| | 20 | | | 0.00 | 200.00 | |
| | 21 | | -84.93 | -84.93 | 115.07 | |
| | 22 | | | 0.00 | 115.07 | |
| | 23 | | | 0.00 | 115.07 | |
| | 24 | | | 0.00 | 115.07 | |
| | 25 | | | 0.00 | 115.07 | |
| | 26 | | | 0.00 | 115.07 | |
| | 27 | 3.22 | -69.06 | -65.84 | 49.23 | |
| | 28 | | | 0.00 | 49.23 | |
| | 29 | | | 0.00 | 49.23 | |
| | 30 | | | 0.00 | 49.23 | |
| | | 203.22 | -153.99 | | 2,287.34 | 76.24 |
| | | 6.77 | | | | |
| **Oct** | | | | | | |
| | 1 | | | 0.00 | 49.23 | |
| | 2 | | | 0.00 | 49.23 | |
| | 3 | | | 0.00 | 49.23 | |
| | 4 | | -46.56 | -46.56 | 2.67 | |
| | 5 | | | 0.00 | 2.67 | |
| | 6 | | | 0.00 | 2.67 | |
| | 7 | | | 0.00 | 2.67 | |
| | 8 | | | 0.00 | 2.67 | |
| | 9 | | | 0.00 | 2.67 | |
| | 10 | | | 0.00 | 2.67 | |
| | 11 | | | 0.00 | 2.67 | |
| | 12 | | -2.30 | -2.30 | 0.37 | |
| | 13 | | | 0.00 | 0.37 | |
| | 14 | | | 0.00 | 0.37 | |
| | 15 | | | 0.00 | 0.37 | |
| | 16 | | | 0.00 | 0.37 | |
| | 17 | | | 0.00 | 0.37 | |
| | 18 | | | 0.00 | 0.37 | |
| | 19 | 200.00 | -48.23 | 151.77 | 152.14 | |
| | 20 | | | 0.00 | 152.14 | |
| | 21 | | | 0.00 | 152.14 | |
| | 22 | | -50.00 | -50.00 | 102.14 | |
| | 23 | | | 0.00 | 102.14 | |
| | 24 | | | 0.00 | 102.14 | |
| | 25 | 500.00 | -5.00 | 495.00 | 597.14 | |
| | 26 | | -83.17 | -83.17 | 513.97 | |
| | 27 | | | 0.00 | 513.97 | |
| | 28 | | | 0.00 | 513.97 | |
| | 29 | | | 0.00 | 513.97 | |
| | 30 | | | 0.00 | 513.97 | |
| | 31 | | | 0.00 | 513.97 | |
| | | 700.00 | -235.26 | | 4,615.44 | 148.89 |
| | | 22.58 | | | | |
| **Nov** | | | | | | |
| | 1 | | | 0.00 | 513.97 | |
| | 2 | | -111.83 | -111.83 | 402.14 | |
| | 3 | | | 0.00 | 402.14 | |
| | 4 | | | 0.00 | 402.14 | |
| | 5 | | | 0.00 | 402.14 | |
| | 6 | | | 0.00 | 402.14 | |
| | 7 | | | 0.00 | 402.14 | |

2339

7⁻¹

| Month | Day | | | | |
|---|---|---|---|---|---|
| | 8 | | | 0.00 | 402.14 |
| | 9 | | -68.87 | -68.87 | 333.27 |
| | 10 | | | 0.00 | 333.27 |
| | 11 | | | 0.00 | 333.27 |
| | 12 | | | 0.00 | 333.27 |
| | 13 | | | 0.00 | 333.27 |
| | 14 | | | 0.00 | 333.27 |
| | 15 | | | 0.00 | 333.27 |
| | 16 | 2.27 | -78.66 | -76.39 | 256.88 |
| | 17 | | | 0.00 | 256.88 |
| | 18 | | | 0.00 | 256.88 |
| | 19 | | -4.54 | -4.54 | 252.34 |
| | 20 | | | 0.00 | 252.34 |
| | 21 | | | 0.00 | 252.34 |
| | 22 | | -77.88 | -77.88 | 174.46 |
| | 23 | | | 0.00 | 174.46 |
| | 24 | | | 0.00 | 174.46 |
| | 25 | | | 0.00 | 174.46 |
| | 26 | | | 0.00 | 174.46 |
| | 27 | | | 0.00 | 174.46 |
| | 28 | | | 0.00 | 174.46 |
| | 29 | | -69.50 | -69.50 | 104.96 |
| | 30 | | | 0.00 | 104.96 |
| | | 2.27 | -411.28 | | 8,620.64 | 287.35 |
| | | 0.08 | | | | |
| Dec | 1 | | | 0.00 | 104.96 |
| | 2 | | | 0.00 | 104.96 |
| | 3 | | | 0.00 | 104.96 |
| | 4 | | | 0.00 | 104.96 |
| | 5 | | | 0.00 | 104.96 |
| | 6 | 200.00 | | 200.00 | 304.96 |
| | 7 | | | 0.00 | 304.96 |
| | 8 | | | 0.00 | 304.96 |
| | 9 | | | 0.00 | 304.96 |
| | 10 | | | 0.00 | 304.96 |
| | 11 | | | 0.00 | 304.96 |
| | 12 | | | 0.00 | 304.96 |
| | 13 | | | 0.00 | 304.96 |
| | 14 | | | 0.00 | 304.96 |
| | 15 | | | 0.00 | 304.96 |
| | 16 | | | 0.00 | 304.96 |
| | 17 | | | 0.00 | 304.96 |
| | 18 | | | 0.00 | 304.96 |
| | 19 | | -35.26 | -35.26 | 269.70 |
| | 20 | | | 0.00 | 269.70 |
| | 21 | | | 0.00 | 269.70 |
| | 22 | | | 0.00 | 269.70 |
| | 23 | | | 0.00 | 269.70 |
| | 24 | | | 0.00 | 269.70 |
| | 25 | | | 0.00 | 269.70 |
| | 26 | | | 0.00 | 269.70 |
| | 27 | | | 0.00 | 269.70 |
| | 28 | | | 0.00 | 269.70 |
| | 29 | | | 0.00 | 269.70 |
| | 30 | | | 0.00 | 269.70 |
| | 31 | | | 0.00 | 269.70 |
| | | 200.00 | -35.26 | | 7,995.38 | 257.92 |
| | | 6.45 | | | | |
| Jan | 1 | | | 0.00 | 269.70 |
| | 2 | | | 0.00 | 269.70 |
| | 3 | | | 0.00 | 269.70 |
| | 4 | | -67.68 | -67.68 | 202.02 |
| | 5 | | | 0.00 | 202.02 |
| | 6 | | | 0.00 | 202.02 |
| | 7 | | | 0.00 | 202.02 |
| | 8 | | | 0.00 | 202.02 |
| | 9 | 200.00 | | 200.00 | 402.02 |
| | 10 | | | 0.00 | 402.02 |
| | 11 | | -83.31 | -83.31 | 318.71 |
| | 12 | | | 0.00 | 318.71 |
| | 13 | | | 0.00 | 318.71 |
| | 14 | | | 0.00 | 318.71 |
| | 15 | | | 0.00 | 318.71 |
| | 16 | | | 0.00 | 318.71 |
| | 17 | | | 0.00 | 318.71 |
| | 18 | | -152.17 | -152.17 | 166.54 |
| | 19 | | | 0.00 | 166.54 |
| | 20 | | | 0.00 | 166.54 |
| | 21 | | | 0.00 | 166.54 |
| | 22 | | | 0.00 | 166.54 |
| | 23 | | | 0.00 | 166.54 |
| | 24 | | -103.12 | -103.12 | 63.42 |
| | 25 | 500.00 | | 500.00 | 563.42 |
| | 26 | | | 0.00 | 563.42 |

| | | | | | |
|---|---|---|---|---|---|
| 27 | | | 0.00 | 563.42 | |
| 28 | | | 0.00 | 563.42 | |
| 29 | | | 0.00 | 563.42 | |
| 30 | | -67.25 | -67.25 | 496.17 | |
| 31 | | | 0.00 | 496.17 | |
| | 700.00 | -473.53 | | 9,728.31 | 313.75 |
| | 22.58 | | | | |

| | | | | | |
|---|---|---|---|---|---|
| **Feb** | | | | | |
| 1 | | | 0.00 | 496.17 | |
| 2 | | | 0.00 | 496.17 | |
| 3 | | | 0.00 | 496.17 | |
| 4 | | | 0.00 | 496.17 | |
| 5 | | | 0.00 | 496.17 | |
| 6 | | -33.95 | -33.95 | 462.22 | |
| 7 | | | 0.00 | 462.22 | |
| 8 | | | 0.00 | 462.22 | |
| 9 | | | 0.00 | 462.22 | |
| 10 | | | 0.00 | 462.22 | |
| 11 | | | 0.00 | 462.22 | |
| 12 | | | 0.00 | 462.22 | |
| 13 | | -27.61 | -27.61 | 434.61 | |
| 14 | | | 0.00 | 434.61 | |
| 15 | | | 0.00 | 434.61 | |
| 16 | | | 0.00 | 434.61 | |
| 17 | | | 0.00 | 434.61 | |
| 18 | 3.00 | | 3.00 | 437.61 | |
| 19 | | | 0.00 | 437.61 | |
| | 3.00 | -61.56 | | 8,764.68 | 461.30 |
| | 0.16 | | | | |

| Balance average | Days 173 | 42,009.77 | |
|---|---|---|---|
| | | **242.83** | |
| Deposit average | Days 173 | 1,808.49 | |
| | | **10.45** | |